for appellant. With the brief time that I have, I'm obviously not going to be able to get into a lot of the details of this appeal, but I want to talk briefly about its significance since the dollars alone would not probably show that. But I hope that the panel here will take seriously the fact that this appeal does involve a couple of issues, at least a first impression. If an attorney for a Chapter 7 bankruptcy estate is going to be penalized, have his fees cut simply because his trustee client lost in litigation, then I would urge this panel to publish a decision to that effect as a warning or caution to the bankruptcy bar that this is a possibility. Because, in fact, there is no published decision at this charge they're going to get paid, whatever the result is? Is that the understanding? We get what we ask for, even if we lose the case flat out and it's meritless? Congress has indicated that they want attorneys for bankruptcy estates to be paid comparably to other attorneys in other private practice. I'm not sure you know what's going on in private practice these days. If I took a case on appeal and cost-benefit analysis, I bet there'd be a fee adjustment with my client at the end of the day, no matter what my billable hour was. Your Honor, I can't obviously preclude that in certain cases, but I do think that there is a distinction here. And there is, in fact, no published decision where an attorney for a Chapter 7 estate has ever been penalized without some sort of a finding of conflict of interest. It's hard to adopt your characterization of being penalized. I don't think anybody's penalizing you. One is penalized if, in fact, one undertook litigation reasonably, and for Really stretching penalized. If one undertook litigation reasonably and there are sufficient assets in the estate, then that attorney should be paid. That's your understanding of penalized? A fee cut is a penalty, Your Honor. Aren't you leaving out a factor? Shouldn't the lawyer look at the bottom line and see what the maximum achievement can be if he's completely successful? And look at the downside also and, number one, determine whether to pursue the litigation, and, number two, to determine what can be charged for it. Absolutely, Your Honor. I think that is necessary. That was done in this case. But I would also point out that that's not the attorney's sole prerogative. The attorney responds to his or her client, the trustee, and the trustee ultimately makes those decisions. It's a little too facile for the district court to say, well, you can just resign at that point. Not in a Chapter 7 estate context, and particularly at certain points in litigation. So track me through, then, how this works. Did you tell the trustee, we've got a possible recovery here, but it's going to cost more to get it than it's worth, and do you want to go ahead anyway? Well, certainly that's not the case here, and I hope Your Honors don't believe that. In this particular case, as I have briefed, the ultimate potential recovery was, in fact, much greater than the projected cost of litigation. Let's give us some actual dollar figures here. Start plugging numbers in. Well, my belief is, and I've briefed this, that all of the attorney's fees incurred by the trustee could be recovered because of a violation of the automatic stay. You can recover under Section 105. Yeah, I just want to know, dollars and cents, how much was the potential recovery? Well, I think the potential recovery, at a minimum, was, I mean, you had the... How about a number? I mean, you've been playing with this case for years. You keep beating around the bush. I don't mean that as criticism, but we're asking for numbers. Well, $55,000. If you count the $30,000 in fees, plus the $25,000 that was the violated, I mean, the set-off that was in violation of the automatic stay. So, you know, that... My point is that whatever, if you recover the attorney's fees, it's a net recovery because you... And if you don't recover the attorney's fees... Then you don't have a net recovery. That's right. But again... And you may have a net loss, actually. You spent more than the value of the recovery. You could conceivably have that. But then, was that the kind of analysis that went back and forth between you and the trustee? That was certainly discussed, Your Honor. And the trustee said, okay, I hear what you're saying, and I direct that you should go ahead and file and pursue this. Well, I don't believe it's in my place to introduce new facts at this stage. But what you're saying is you didn't introduce them in the bankruptcy, in the lower court either. The trustee did submit his declaration stating that he supported the litigation. It was complex and there's been no attention really paid by either the bankruptcy court or the district court to that fact. I just wonder, I mean, I think, I know what the state of the law is on attorney-client privilege, but I think when, in certain circumstances, you necessarily waive the privilege if you're relying on the client as the basis for having directed you to take a course of action. Is there some rule of law that prohibits putting, having the trustee say, essentially, I'm not trying to get you to disclose things that aren't in the record here that are improper, but if you had put before the district court or the bankruptcy court, look, I was very up front with my client. I told them these are the risks, this is the cost-benefit, and the trustee directed that I do it. Is there some attorney-client privilege that prevents doing that? I'm not sure, Your Honor, that that's prohibited, but it doesn't come up naturally in the context of these motions because they're decided on the papers, basically, and there was no reason to expect that that was necessary here. Plus, I don't think that an attorney for a trustee should normally be put into that position of having to distinguish between what his or her judgment is and that of the trustee, and that's part of the problem with this case. The bottom line here is that, regardless of whether or not the client is a trustee, the bankruptcy attorney who's presenting the fee application in a case that on its face objectively calls into question whether there was a proper cost-benefit relationship here should just say, well, there's nothing I can do about that because they did it. I have to assume that it was undertaken with proper legal advice and direction of the client, of the trustee. I'm saying it's improper for a bankruptcy court to cut the fees of a bankruptcy trustee's attorney without similar attention being paid to the trustee's own fees if that is, in fact, the judgment of the bankruptcy court. Well, how then if that's the, so what needs clarification then sounds like not the punishment issue, but the question of what's the proper evidence or balance of factors if the bankruptcy court thinks a certain course of litigation was ill-advised? Because you say that it didn't occur to you or the trustee to put in anything to justify why this was undertaken. You're bearing the brunt of it when, in fact, the implication of it was the trustee's decision. So if somebody decides in viewing the reasonableness of the fee, if it's going to come out of everybody's height, it should come out of the one who basically forced the decision. That should be the trustee. I think certainly if a bankruptcy court feels that there's an issue here and wants to attain further evidence as to whose litigation decision this was, the bankruptcy court has that opportunity based on the record here. There is no basis for saying bankruptcy attorney, you are at fault, bankruptcy trustee, you are not exposed to a cut. But what I wanted to say was the real underlying issue here is not whose decision this was. It was a reasonable decision. And there is a California case that neither the bankruptcy court nor the district court has really paid much attention to, this Eistratt v. Humiston case, which says that there is no mutuality of setoff in the state of California when you have one debt that is owed by an individual member of a couple and another debt owed to both members of that couple. Neither court took that seriously. Obviously, the bankruptcy court did not find that. But it certainly goes to the issue of whether there was good reason for the litigation that was undertaken if this court takes that case seriously. Are we looking at this under an abuse of discretion standard? Your Honor, I have indicated in the brief that I believe that this court can review all issues de novo because they are really issues of mixed law and fact. But, yes, we can review it de novo, but what I think we are probably looking at is the bankruptcy judge and did he abuse his discretion when he did what he did. And if that is, in fact, the standard adopted by the panel, then I have argued as well that the bankruptcy court did abuse her discretion in this case simply because there was no attention paid to the underlying reasonableness of the litigation based on that one California case. The bankruptcy court said she was cutting the fees in half, but, in fact, she was cutting the unawarded fees by 90 percent. Well, that's where we get into this whole disgorging issue, which is really the other issue of first impression here. Can a bankruptcy court go back and revisit an interim fee application to effectively require it? Aren't interim fees always subject to adjustment? They are only subject to adjustment, though. I mean, the cases seem pretty clear on this. They are only subject to adjustment after they have already been awarded if there is administrative insolvency, if there is other misconduct that has come up. Again, there's no cases out there saying you can go back and revisit an interim fee award where it's already been finalized, where it's already been awarded, fees have already been granted. They may not have all been paid where you don't have any finding of misconduct, excessive billing, et cetera. And, by the way, the U.S. trustee has referred several times to excessive billing, and I want the panel, hopefully, to be clear that there is no issue of excessive billing here, and the bankruptcy court never found excessive billing. It's simply a question of reasonableness of litigation. Well, what I read is a very careful decision by a bankruptcy judge and a very careful review by the district court, taking the MedNet factors, looking at them, and the bankruptcy court said it also appeared and should have been evident to the trustee and counsel that such violation, meaning the automatic stay violation, was an inadvertent bureaucratic error, and the IRS would seek relief, and the whole thing would go away. Is that necessarily wrong? That is wrong, Your Honor. That's what happened. That's absolutely wrong. That's what happened. If, in fact, there is no offset right, then the IRS can't simply go back and have its violation of the automatic stay blessed. And that's the whole key here. If you start from the premise that the trustee and his attorney did, that there was no offset right here, which was a very reasonable premise based in California law, you do not get to the proposition that, oh, this is simply a bureaucratic error on the part of the IRS. With all due respect, Your Honors, I would ask you to pay particular attention to that issue. What was the California case you cited? It's the Eistrott v. Humiston case. Humiston. Okay. Thank you. All right, counsel. We'll hear from the other side. Thank you. Thank you. Good morning. I'm Jeffrey Lodge. I'm an attorney for the United States trustee. The United States trustee objected to Mr. Lichty's compensation because he failed to use proper billing judgment. The bankruptcy court agreed with the United States trustee and in round numbers awarded $24,000 of the $34,000 he requested. The amount at stake here today is less than $10,000. The bankruptcy court agreed with the United States trustee and reached its conclusion by applying bankruptcy code section 330 and the factors set forth in MedNet and Puget Sound Plywood. These are the cases that are the current authority in the Ninth Circuit. There are no material disputed facts. Essentially, Mr. Lichty was hired by the bankruptcy estate to prosecute three adversary proceedings. The fees in question relate only to the litigation with the Internal Revenue Service. The complaint against the Internal Revenue Service sought to recover $28,459. The Internal Revenue Service obtained these funds by offsetting the debtors' 1996 and 1997 tax refunds against an existing tax assessment. Successful recovery of the $28,000 would have been divided pro rata between the Internal Revenue Service and the State of California Employment Development Department. The IRS and the EDD both have claims that are equal in priority and non-dischargeable in nature. According to Mr. Lichty's points and authorities at the bankruptcy court, full recovery would have resulted in a net benefit of paying the EDD between $3,000 and $5,000. In spite of the small amount at stake, Mr. Lichty billed the estate $19,065 for this litigation. During the litigation, the IRS was Was that number that you just mentioned, the $3,000, was that net after recovery of attorney fees, presuming? Yes. That would have been the actual distribution to the EDD after administrative costs. But including a recovery of attorney fees from IRS? His argument is that there was a fee-shifting provision that would have taken care of his fees. If the fees are shifted, I think the amount available to the EDD would have been $7,209. Okay. Now, Mr. Lichty has also raised this question about adjustment of the interim fee award. Is there any Ninth Circuit law you're aware of that says that, yay or nay, interim fee awards can be modified except for the circumstances that Mr. Lichty suggested? I think the bankruptcy code itself, Section 331, requires that. In fact, Bankruptcy Code Section 330A-5 Yes. 330A-5 states, The court shall reduce the amount of compensation awarded by this section by the amount of any interim compensation awarded. So I think it's the bankruptcy code. Oh, but wait a minute. That's not directly responsive. That says you can reduce it by the amount of interim. That just says if he's already been paid, then take that out. What I'm asking is, can you go back and say, Well, you've got a $25,000 interim fee award for services rendered to that point. Now, at the end of the bankruptcy process for the final settlement, the bankruptcy court decides, gee, he shouldn't have gotten as much as I gave him. I'm going to take $5,000 out of that interim fee award because of I disagree with litigation judgments. Is there authority in the Ninth Circuit for doing that? There is authority. It's not at the Ninth Circuit. But I believe there's a district court decision that says you can go back and request discouragement from an attorney. But there was no discouragement requested in this case. Neither the court, the United States trustee, or the Chapter 7 trustee have requested Mr. Lichty pay any fees back. In effect, the affirming this bankruptcy court decision will result in a payment to Mr. Lichty in the amount of $8,415. The court essentially awarded Mr. Lichty approximately $24,000 for his services in this case. Well, did the court not say that the amounts previously awarded were too much for those services? So those are reduced in making the final calculation? Well, I think the bankruptcy court at the interim level did not assess the reasonableness of the fees at all. The court was deciding whether that was proper for interim compensation, which doesn't require a reasonableness analysis. But that's the question. That's what I was asking. Having to the extent fees, the total fees allocable to this litigation, did some of the adjustment in effect reduce the amount of fees? I thought that was my impression, as Judge Fletcher just said, that the total award for that litigation meant that he had been overcompensated for that litigation in the interim fee award, correct? Yes. Okay. So whether it's discouragement or whatever, it's an adjustment. So he'd been paid without a reasonableness analysis. Now the bankruptcy court goes back and looks at the total litigation and decides that some percentage of that interim fee award allocable to that litigation was too much. And you said the only authority for that ability to do that comes out of a district court opinion outside the Ninth Circuit. Well, I think the court looks at the entire litigation at the end and makes one decision on fees. I understand that you think that. I'm asking is there Ninth Circuit authority that makes it clear, so we don't confront this argument in the future, that somehow at the end of the process something that goes back and in effect readjusts the interim fee? Is there any clear Ninth Circuit authority on the bankruptcy court's ability to do that? I believe the Riverside-Lyndon case does that. All right. The Riverside who? Riverside-Lyndon. I believe I cited that in my brief. Yes. The Riverside I cited was 925S2-320. I believe there are two published or three published decisions in that case. But I believe the one that I cited is relevant to this discussion. Mr. Lichte also argues that the bankruptcy court was clearly erroneous in its conclusion that the IRS litigation was not necessary or beneficial. He argues that the court misunderstood his underlying arguments. The merits of the underlying litigation are barely relevant here. Even if Mr. Lichte were entirely correct about his theory of recovery, the amount at stake would not change. And it would still be very small. Well, are you looking at $3,000 or are you looking at the $7,000 when you make that statement? I think either one. Mr. Lichte was awarded $9,533 in this case. The amount at stake, best case, was $28,000. When it came into the bankruptcy estate, it had to be divided pro rata. And most of it would be given right back to the IRS. The rest of it would go to the EDD. So the amount at stake here really is very small. On the other hand, doesn't the trustee have an obligation to creditors? To recover the funds? Yes, ma'am. So why do we say that only what would come into the estate? Because, in effect, these would go out to creditors, isn't that right? Yes. Yes, that's true. And the United States trustee did not object to the entire award for the IRS litigation. We objected to about $7,500 of it. And the bankruptcy court found that Mr. Lichte should receive about $9,500 of fees. So he didn't go without any compensation in this case. And I would like to mention that the recovery on all three of the adversary proceedings prosecuted by Mr. Lichte netted a total of $33,000. If he's awarded $24,000 or $25,000 by the bankruptcy court, those fees represent 75 percent of his recovery. If the bankruptcy court had awarded the entire amount that Mr. Lichte had requested, he would have exceeded 100 percent of all of the funds he recovered by the bankruptcy estate. In conclusion, I believe the bankruptcy court applied the correct standard. There was no abuse of discretion, and the amount of fees awarded was reasonable, and the bankruptcy court decision should be affirmed. Thank you, Your Honor. Thank you, counsel. May I have one? Yes, Mr. Lichte. First of all, I believe that there is a reasonableness requirement even at the interim fee application stage, and I would like the court to take due note of that. The other point here that's been ---- What does that mean? Well, I think Mr. Lodge indicated that the U.S. trustee's position is that the bankruptcy court doesn't have to look at reasonableness of the fees when it makes an interim fee award, and therefore it can do that at the end of the case and upset an interim fee award. My position, I think the law is that, in fact, there is a reasonableness analysis that has to take place even at that point. Which means what? That you can't change the interim fee award? If the bankruptcy court believes that there is going to be an issue remaining at the end of the case at the final fee application, then the bankruptcy court needs to take that into account at the time of the interim fee award. Which means what? Which means that maybe the bankruptcy court only awards 50 percent, or maybe it says, no, counsel, I'm going to wait until the final fee application to make sure that you're paid. And where does this go? I mean, you're trying to tell us that the interim fee award is somehow binding, and once that's rendered, that's it. You can't look back at it. Is that what I hear you saying? Absent disgorgement standards, which were not met. Well, the case that counsel cited for the proposition that's not true, I don't think holds that. But it may, Evangeline, says interim fee awards are not final determinations. And it makes it pretty clear, at least the Fifth Circuit doesn't, Evangeline, and Mansfield, Tyre and Rubber, another bankruptcy case in the Tenth Circuit, and Callister, that you can take a look at these interim fees at the end of the day and see whether they were appropriate or not. You're right. Rather, they are interlocutory and reviewable. They are intended only to provide some interim relief from the economic hardships of subsidizing litigation. The law of the case doctrine doesn't apply to interim fee awards. They don't provide very much relief if, in fact, they're going to be forfeited later on by a subsequent reason. Well, there you go again. I mean, it's not forfeited. I mean, you keep trying to put labels on things. Something's penalized. Something is forfeited. And they don't say here you're forfeiting the interim fee. They're saying it's an interim fee, it's not a final determination, and the bankruptcy court has the capacity to go back and take a look at that at the end of the day and see whether it makes any sense in the overall picture. That's not forfeiture. I'm not saying there can't be any revisiting. I'm just saying it has to be guided by certain strict standards which were not met here. And what are those standards that weren't followed? The standards are if there's administrative insolvency, if there's some indication at the end of the case that there was, in fact, excessive billing, conflict of interest, fraud. Well, the whole MedNet approach is not sufficient to incorporate that? I don't have any problems with the MedNet approach, but I don't think the MedNet approach here leads us to saying, yes, you can revisit an interim fee award under these circumstances. The only other point I want to quickly make, Your Honor, is that the amount at issue that could have been recovered by the EDD is not really the issue here. A trustee has a duty not only to maximize assets in the estate, but to equalize distribution between creditors. A trustee does not have the ability to say, well, I think this is going to be too piddling a recovery to you, therefore I'm going to ignore you. The trustee simply cannot do that, and the trustee cannot assume that the state's debt here was non-dischargeable. Instead, there's a duty to all creditors, regardless of the size of the recovery, and that's what we were trying to do. Thank you, Your Honor. Thank you, Counselor. Okay. Thank you. The case just argued as ordered and submitted, and we'll call Vortex Fishing Systems. Wesley Higgins versus Vortex Fishing Systems. Vortex Fishing Systems. Vortex Fishing Systems. Vortex Fishing Systems.
judges: B. Fletcher,trott, Fisher